Cuma, per Evaus, J.
All the indictments in these cases, are in the common form to be found in Chitty and the books of precedents. They charge in substance, that the defendants unlawfully, riotously and routously, assembled together to disturb the peace of the State, and being so assembled, did make great noise, riot, tumult and disturbance, for a long space of time, to the great terror and disturbance of the people, &c. All the essential ingredients of a riot are here charged, and the motion in arrest of judgment on this ground cannot prevail. In the second case stated above, against Brazil and Beach, the indictment charges that the defendants, with divers other persons, to the jurors unknown, to the number of ten, did assemble, &c. According to all the authorities, it is not necessary to allege that the riot was committed by three persons named in the indictment. It is sufficient to name those who are known and to allege that the others were unknown. These cases are wholly unlike the case of O’Donnell, 1 M’Cord. 532, which was relied on in the argument. In that case, the indictment charged that O’Donnell, with two other persons, committed the riot. The grand jury found the bill against two only, *260 and there was no allegation that other persons unknown were concerned with him.
The first ground for a new trial is, that the facts proved do not amount to riot, or any legal offence. ~ On this ground I would remark, that it is wholly immaterial whether the facts proved establish that the defendants are guilty of a riot, a rout, or unlawful assembly. They are kindred offences, and the greater includes the less. Every battery includes an assault, and every riot includes a rout and unlawful assembly. A general verdict of guilty on an indictment for assault and battery will be sustained, although the evidence establish only an assault. So also I apprehend a verdict of guilty on an indictment for riot will be supported, although the evidence establishes no more than an unlawful assembly. But do the facts proved amount to a riot? , Hawkins says a riot is a tumultuous disturbance of the peace by three persons or more, assembled of their own authority, with intent, mutually, to assist each other, and afterwards putting the design in execution in a terrific and violent manner, whether the object be lawful or unlawful. This partakes of the imperfections of all definitions, and a correct idea of the offence is only to be obtained by analysing the cases which have been decided. All the authorities agree that if the act committed be a trespass, it is unlawful and riotous, as if the object be to beat another, or to pull down his house, or such like acts.— But a man may lawfully pull down his own house in a tumultuous manner and with a great concourse of people, yet if it be accompanied by no circumstances, calculated to excite terror or alarm in others, it would not amount to a riot — so also if a dozen men assemble together in a forest and blow horns, or shoot guns, or such acts, it would not be a riot. But if the same party were to assemble at the hour of midnight, in the streets of Charleston, or Columbia, and were to march through the streets crying fire, blowing horns and shooting guns, few, I apprehend, would hesitate in pronouncing it a riot, although there might be no ordinance of the city for punishing such conduct. And why ? Because such conduct in such a place is calculated to excite terror and alarm among the citizens. Lord Holt says, 10 Mod. 116, if a number of men assemble with arms, in terrorem populi, although no act be done, it is a *261 riot. On the same principle, an indictment was sustained for riotously locking a foot ball in the town of Kingston, 2 Chitty. Cr. 494. It was an amusement, but accompanied with such circumstances of noise and tumult, as were calculated to excite terror and alarm among the inhabitants of the town. Parker, Ch. J., says in Runnel’s case, 10 Mass. R. 518, “ if the offence consists in going about armed, without committing any act, the words ‘interrorem populi,’ are necessary — because the offence consists in terrifying the people. For the same reason, it is said in the case of the rioters at Covent Garden Theatre, 2 Camp. 358, that the audience may lawfully express their approbation or disapprobation of an actor; yet if a number of persons go there with intent to render the performance inaudible, though they offer no violence to the house, or any person there, they are guilty of a riot. ' These authorities, I think, fully sustain the position, that even admitting 4he acts the defendants performed were not in themselves unlawful, yet they were calculated and intended to excite terror and alarm, and in two of the cases were actually proved to have produced that effect. And in confirmation of this conclusion, it is stated in a note to Russell on Crimes, 1 vol. p. 247, to have, been decided in Pennsylvania, in the case of Cubs and others, reported in Addis. 277, “ If a number of persons assemble in a town in the dead of night, and by noises or otherwise, disturb the peaceable citizens, it is a riot.” The second ground for a new trial, relates exclusively to the case of Miller. He was at the head of the party according to his own declaration. He was not seen in the midst of them ; but he was seen coming from where they were assembled in a state of intoxication, with a pistol in each hand. This evidence satisfied the jury, and I am entirely content with the verdict.
Eaves, for the motion.
Player, Solicitor, contra.
The motion is dismissed on all the grounds.
O’Neall, Earle, Butler and Richardson, Justices, concurred.