## STATE *v.* SAMPSON L. RUSSELL & AL.

A riot is an offence at common law, and in an indictment it is not necessary to allege a proclamation to disperse; or that the respondents assembled to assist each other in the execution of an act of a private nature; or that they executed the act for which they assembled; neither is the indictment open to the objection of duplicity because it alleges a riotous assembly, and an act of violence, which of itself might constitute a distinct offence.

THIS was an indictment for a riot, found at this term.     Indictment is in these words :

\*     \*     \*     \*     "That Sampson L. Russell, of Portsmouth, in the coun-

ty of Rockingham aforesaid, yeoman, Augustus A. Walden, of Portsmouth, in said county, yeoman, Richard Walden, of Portsmouth, in said county, yeoman, and Richard Smart, of Portsmouth, in said county, yeoman, together with divers other evil disposed persons to the number of ten, to the jurors aforesaid, as yet unknown, on the sixteenth day of July, in the year of our Lord one thousand eight hundred and sixty-three, at Portsmouth, in the County of Rockingham aforesaid, with force and arms, did unlawfully, riotously and routously assemble and gather together, to disturb the peace of said State; and, being then and there so assembled, and gathered together, in and upon one Frank B. Johnson, unlawfully, riotously and routously did make an assault; and him, the said Frank B. Johnson, did then and there unlawfully, riotously and routously beat, wound and ill treat, so that his life was thereby greatly endangered, and other wrongs then and there unlawfully, riotously and routously did and committed; to the great damage of him, the said Frank B. Johnson; to the great terror of the people; contrary," &c.

The respondents moved to quash the indictment, for the following reasons:

1. Because the indictment purports to be for a riot, and contains words charging that offence; but it does not aver that any proclamation was made to the rioters to disperse, nor that the defendants or any other persons remained assembled after a proclamation had been made.

2. The indictment is double, charging a riot, and an assault upon Frank B. Johnson.

3. The indictment does not aver that the defendants assembled to assist each other in the execution of any act of a private nature.

4. The indictment does not aver that the defendants executed the act for which they assembled, nor that they did assemble for the execution of the act which the indictment avers they did do.

The matters contained in said indictment, in the manner and form as the same are therein set forth, are not sufficient in law to maintain the aforesaid indictment against these defendants.

*Charles H. Bell, Solicitor,* for the State.

*Hatch & Frink,* for defendants.

BELLOWS, J. A riot is a common law offence, and is said to be a tumultuous disturbance of the peace, by three or more persons, assembling together, of their own authority, with an intent mutually to assist one another, against any who shall oppose them, in the execution of some enterprise of a private nature, and afterwards actually executing the same in a violent and turbulent manner, to the terror of the people—whether the act intended were of itself lawful or unlawful. Hawk. P. C. B. 1, ch. 65, sec. 1; 5 Burns' Justice, 14; 2 Chitty Cr. Law, *488; see also *State* v. *Renton* 15 N. H. 172; 3 Greenl. Ev. sec. 216; Wharton's Am. Cr. Law 722; Roscoe Cr. Ev. 882.

In the case before us, it is objected that the indictment does not al-

lege that a proclamation under the riot act had been made, or that the defendants remained assembled after such proclamation. Nor do we think it necessary that it should; for it is none the less an offence at common law, because no proclamation was made. The offence of refusing to disperse after such proclamation, is, in fact, a new and distinct offence, and punishable, in this State, by both fine and imprisonment. In England, under the riot act of 1 Geo. 1, ch. 5, the parties are guilty of a capital offence, if they do not disperse within one hour after such proclamation, and yet the parties are held guilty of a riot, although no such proclamation was made, upon the ground that it was a misdemeanor at common law. *Rex* v. *Fursey*, 6 C. and P. 81.

But it is contended that the whole of the former law has been revised by our statutes, and that, therefore, the common law, by implication, is repealed. We cannot, however, so regard it. On the contrary, the offence created by the statute, that is, the refusal to disperse upon proclamation, may well be considered as another and distinct offence from that of a riot at common law; especially as the law assumes, that, before such proclamation is made, the common law offence of a riot, or at least, of an unlawful assembly, will have been committed. So, also, the law leans against a construction of a statute that shall by implication repeal a former statute; and the same principle applies to the implied repeal of the common law. *State* v. *Wilson*, 43 N. H. 418.

It is said, also, by the defendant's counsel, that the repeal by implication in this case is countenanced by the alleged fact that the common law in respect to riots is inconsistent with the spirit of our institutions; and so far as mere political demonstrations and parades, unattended by violence, actual or threatened, are held to be riots, or unlawful assemblies, it might be so; but this, we think, cannot apply to the case of mobs, or other tumultuous assemblages gathered for the avowed purpose of violence to an individual, or classes of individuals; or for the destruction of their property; and actually proceeding, with force and circumstances calculated to inspire terror, to execute their designs. In such cases, the offence is complete at common law, without regard to the fact whether the proclamation has or has not been made. And we perceive nothing in the provisions for punishing the refusal to disperse, upon proclamation, that furnishes any ground for an implication, that, unless there was such proclamation or refusal to disperse, there is no riot. If it were otherwise, then, in the case of a riot of the most alarming character, like the late New York riots, attended with personal violence to numerous individuals, striking terror into the hearts of the whole community, the guilty persons would be liable only to actions of trespass for injuries to property, indictments for assault and battery, and the like, unless, after proclamation, they had refused to disperse. Such punishment, it is obvious, would be wholly inadequate to the offence; and we think no such effect was intended by the Legislature.

That the common law was not repealed by the English Riot Act, which is much like our own in this respect, is seen in the case of *Rex* v. *Fursey*, before cited; and so are the forms of indictment, which, like

the one before us, contain no allegation of a refusal to disperse.  2 Chitty Cr. Law, *488, 500, 503, 504; 5 Burns' Justice 55.

In *State* v. *Renton,* 15 N. H. 169, it is quite apparent that the court went upon the ground that the common law in respect to riots was in force in this State; and we think there has been, since that time, no change in our statute provisions that furnishes any ground for implying a repeal of the common law.   The provisions of the Revised Statutes do not in fact change the substantial character of the laws of 1791 and 1829, except in providing for the proclamation whenever *any* persons shall be unlawfully, riotously, and tumultuously assembled, without specifying the numbers of such persons, or the fact of their being armed, as is done in the Laws of 1791 and 1829.

So it is laid down in Wharton's Am. Cr. L. 723, that it is not necessary that the riot act should be read to constitute a riot, and that before the proclamation can be made, a riot must exist; to which he cites *Rex* v. *Fursey,* 6 C. and P. 81, before referred to.

In *Com.* v. *Runnels & al.,* 10 Mass. 518, the indictment contained no allegation of a refusal to disperse upon proclamation, and upon motion in arrest of judgment, the indictment was held good, although this objection was not taken; yet it is quite clear that the case went upon the ground that the common law was in force.   See also, 3 Greenl. Ev. sec. 216 to 222, which states the evidence required to be adduced, without including the refusal to disperse.

It is also objected that the indictment charges two distinct offences in the same count, that is, a riot, and an assault and battery; but we think that this objection is not well founded.   A riot is a specific offence, including in its elements a riotous assembly, and an act of violence, and the battery is not laid as a charge in itself, but as a part of the riot; the battery being alleged to have been committed unlawfully, riotously, and routously.   *Rex* v. *Heap,* 2 Salk. 594.

The indictment before us is also in accordance with established forms. Chitty Cr. L. *488, 500, 503, and 504; 5 Burns' Jus. 55.

An act of violence is, indeed, generally said to be necessary to constitute a riot, otherwise it will be a rout or unlawful assembly only. Chitty Cr. L. 488, note; Hawk. P. C. ch. 65, secs. 4, 8, 9; 3 Greenl. Ev. sec. 216; and this, in fact, enters into the received definition of the offence.   In this respect the offence of riot stands upon a footing similar to that of the crime of burglary, which may be proved by showing a breaking and entering of a dwelling house, and stealing therein, and the indictment may properly so allege it.

If the indictment in this case charges the offence to be *contra formam statuti,* as is probable, this allegation may be rejected as surplusage. *State* v. *Buckman,* 8 N. H. 203.

It is also urged that the indictment is defective in not averring that the defendants assembled to assist each other in an act of a private nature; or that they executed the act for which they assembled, nor that they assembled to do the act which it is averred they did do.   But we think these objections ought not to prevail.   It is alleged that these defendants, with others, riotously, &c., assembled to disturb the peace of the

State; and this accords with the forms before referred to, and is held to be well in *State* v. *Renton*, 15 N. H. 172.

A riotous assemblage and an act of violence constitute a riot; both of these are alleged, and we think sufficiently; and so, too, as to the want of an averment that they executed the act for which they assembled. Here again the indictment accords with established forms, and also with the doctrine of *State* v. *Renton*.

*Motion to quash denied.*