## COMMONWEALTH *vs.* ALEX FRISHMAN & others.

Suffolk.   March 10, 1920. — April 2, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Pleading, Criminal,* Complaint.   *Riot.*

Allegations in a complaint, that the defendants "did unlawfully, riotously and tumultuously assemble with thirty or more persons, and while so unlawfully assembled as aforesaid, with a certain weapon dangerous to life, to wit, a knife, did . . . wound . . . a police officer of said city of Boston, lawfully engaged in dispersing and suppressing said unlawful assembly," fully and sufficiently charge the defendants with the common law offence of a riot.

The allegation of assault in the complaint above described is merely incidental to and a part of the charge of riot, but is not an essential part of that offence.

A parade on a public street of the city of Boston without a permit required by the board of street commissioners is unlawful.

Where, at the trial of a complaint charging the common law offence of a riot, there is evidence upon which it can be found that the defendants participated in a common purpose by force and violence to march and parade on a public street without permission and in violation of law, that during the progress of the parade the paraders were ordered to disperse and that violence ensued, a finding is warranted that the defendants were guilty of a riot.

In order that the defendants above described should be found guilty of the common law offence of a riot, it is not necessary that all of them should commit a physical act of violence; but it is sufficient to warrant conviction if the defendants are found to have been acting in concert with the others for the accomplishment of a common unlawful purpose and were aiding and abetting by their presence.

Persons present at a riot and consenting to the unlawful acts and in a position where they may render aid and assistance may be found guilty as principals.

Where, at the trial of the complaint above described, which alleged that a police officer was stabbed with a knife, there was evidence that the officer was stabbed but no direct evidence of the character of the weapon used, it was *held,* that a finding that he was stabbed with a knife was not unwarranted.

Upon a complaint charging the common law offence of a riot and containing an allegation that the defendants "while unlawfully assembled" assaulted a police officer with a knife, it is not necessary under R. L. c. 218, §§ 21, 34, 35, to show that the officer was stabbed by one of the defendants or that he was stabbed at all.

Upon a complaint charging an offence which is a riot at common law, the offence exists independently of statute, and it is not necessary to prove that the participants were ordered to disperse by the officials named in R. L. c. 211, § 1.

FOURTEEN COMPLAINTS, received and sworn to in the Municipal Court of the Roxbury District of the City of Boston, in two counts,

charging in both counts that the defendants on May 1, 1919, did "within the judicial district of said court, with force and arms, unlawfully, riotously and tumultuously assemble with thirty or more persons against the peace of said Commonwealth, and the form of the statute in such case made and provided," and in the second count, charging in addition that the defendants "while so unlawfully assembled as aforesaid, with a certain weapon dangerous to life, to wit, a knife, did beat, bruise, wound and evil treat, one Samuel C. Hutchins, a police officer of said City of Boston, lawfully engaged in dispersing and suppressing said unlawful assembly."

On appeal to the Superior Court by agreement the defendants were tried together before *Fessenden*, J., on the second count of the complaint. The material evidence is described in the opinion. At the close of the evidence, the defendants requested, among others, the following rulings:

"1. The evidence is insufficient to warrant a conviction of the crime set forth in the complaint;

"2. There is no evidence to justify a finding that officer Hutchins was stabbed with a knife;

"3. In order to find the defendants guilty of rioting, the jury must be satisfied beyond a resonable doubt that officer Hutchins was actually stabbed by one of the paraders so called, and not, whether accidentally or otherwise, by one of the civilians so called who were aiding the police;

"4. There is no evidence that any of the defendants participated directly or indirectly in any riot;

"5. In order to find the defendants guilty of rioting, the jury must find beyond a reasonable doubt that each of them so found guilty must have had an intent, previous to the alleged stabbing of officer Hutchins, together with others of the defendants or with others of the paraders so called, to so stab officer Hutchins, or at least to follow such a course of conduct that his stabbing naturally and logically flowed therefrom; and

"6. Before the defendants could be convicted of a riot in this Commonwealth, it is necessary that the mayor of the city of Boston, or one of the council of the city of Boston, or a justice of the peace or the sheriff, or one of his deputies, of the county of Suffolk should have gone among the persons so assembled on

May 1, 1919, or as near as might have been with safety, and in the name of the Commonwealth, commanded the persons so assembled to peaceably disperse; and until one of the aforesaid officers requested the persons so assembled to disperse, they cannot be guilty of a riot."

The judge refused to give these rulings, and in substance instructed the jury that riot could be described generally as a tumultuous disturbance by a sufficient number of persons, in this case thirty or more, assembled with intent to commit or assist in the execution of an unlawful act by force and violence; that the essential element was that there must be the violence and the intent to commit an act of violence; that it was not necessary that there should be a long consultation beforehand; that the purpose might be formed suddenly; that, although the assembly may not have been unlawful on the first coming together of the parties, it might become so by their engaging in a common cause to be accomplished with force and violence; that the claim of the Commonwealth was that these persons determined to override the police and to proceed with force and violence; that mere presence was not enough; that there must be the intent to accomplish unlawfully the purpose by force and violence; that it was not necessary to show that any one of the defendants struck Hutchins; that if the defendants, having such intent, were there, aiding, abetting, encouraging, participating, advising by their presence, by their gestures, signs, or by anything which they did or said, they would be equally guilty with the one who struck the blow, if any was struck; that it was necessary that it should be shown that the defendants so participated in the commission of the offence on officer Hutchins; that each one of the defendants should have so participated; that the defendants were presumed to be innocent, and that the Commonwealth must establish beyond a reasonable doubt that the defendants were guilty of the essential matters shown in the complaints.

The jury found the defendants guilty. The defendants alleged exceptions.

R. L. c. 211, § 1, reads as follows: "If twelve or more persons, being armed with clubs or other dangerous weapons, or if thirty or more persons, whether armed or not, are unlawfully, riotously or tumultuously assembled in a city or town, the mayor and each

of the aldermen of such city, each of the selectmen of such town, every justice of the peace living in any such city or town and the sheriff of the county and his deputies shall go among the persons so assembled, or as near to them as may be with safety, and in the name of the Commonwealth command all persons so assembled immediately and peaceably to disperse; and if they do not thereupon immediately and peaceably disperse, each of said magistrates and officers shall command the assistance of all persons there present in suppressing such riot or unlawful assembly and arresting such persons."

R. L. c. 218, §§ 21, 34 and 35, read as follows:

"Section 21. The means by which a crime is committed need not be alleged in the indictment unless they are an essential element of the crime."

"Section 34. An indictment shall not be quashed or be considered defective or insufficient if it is sufficient to enable the defendant to understand the charge and to prepare his defence; nor shall it be considered defective or insufficient for lack of any description or information which might be obtained by requiring a bill of particulars as provided in section thirty-nine.

"Section 35. A defendant shall not be acquitted on the ground of variance between the allegations and proof if the essential elements of the crime are correctly stated, unless he is thereby prejudiced in his defence. He shall not be acquitted by reason of an immaterial misnomer of a third party, by reason of an immaterial mistake in the description of property or the ownership thereof, by reason of failure to prove unnecessary allegations in the description of the crime or by reason of any other immaterial mistake in the indictment."

*T. G. Connolly,* (*E. J. Casey* with him,) for the defendants.

*D. M. Lyons,* Assistant District Attorney, for the Commonwealth.

CROSBY, J. These complaints in the second counts charge that the defendants on May 1, 1919, "did unlawfully, riotously and tumultuously assemble with thirty or more persons, and while so unlawfully assembled as aforesaid, with a certain weapon dangerous to life, to wit, a knife, did . . . wound . . . one Samuel C. Hutchins, a police officer of said city of Boston, lawfully engaged in dispersing and suppressing said unlawful assembly. . . ." The

allegations in the second counts fully and sufficiently charge the defendants with the common law offence of a riot. *Commonwealth* v. *Runnels,* 10 Mass. 518. *Commonwealth* v. *Gibney,* 2 Allen, 150. Train & Heard's Prec. of Indictments & Special Pleas, 456. 3 Bish. New Crim. Proc. § 992 (2).

On May 1, 1919, a meeting of Socialists was held in the Dudley Street Opera House in Boston. The record recites that it was an orderly meeting held for a lawful purpose; that it was largely attended, both sexes and various nationalities being present; that there was music, and speaking from the platform; that the meeting adjourned to International Hall, so called, which was more than a mile distant from the opera house; that those at the meeting and others went from the opera house up Warren Street on the way to International Hall; that up to that time there were about fifteen hundred men and women and some children present; that nearly all wore some article of red and a large number of red flags were carried, on some of which were printed words in a foreign language; that as the crowd went up Warren Street there was singing in one or more foreign languages; that no American flag was carried; that from various parts in this body there were shouts, singing, and loud cries of "Down with the Millionaires! Kill the Cops! To Hell with the Police! Hurrah Bolsheviki! To Hell with the American Flag." From this evidence it is plain that the jury were warranted in finding that the crowd of men and women walking along Warren Street constituted a "procession or parade" and that the persons so participating were "marching" on a public street as those words are used in a regulation of the board of street commissioners of the city of Boston, which regulation was in force on that day and provided that "No procession or parade, containing two hundred or more persons . . . shall . . . march on any public street of the city except in accordance with permit issued by the board of street commissioners." St. 1854, c. 448, § 35. St. 1908, c. 447. No permit had been issued to this body.

There was further evidence that when the crowd reached the corner of Warren and Copeland streets, police officer Wiseman stood in front of the advancing crowd and asked the man in front leading the parade if he had a permit, "and a fellow standing right in behind him said, 'No, to Hell with the permit;'" that

the officer said "Don't you know you ain't allowed to parade the streets without the American flag?" and he said "To hell with the American flag and the cops too." The officer testified that thereupon he was wheeled around, jostled, and some one tried to trip him, and the crowd kept right on past him. There was also evidence tending to show that threats were made to police officers; that soon after a patrol wagon containing six or seven officers in charge of Sergeant Casey came up; the men jumped out of the wagon and formed a line across Warren Street in front of the paraders and Casey asked the man who appeared to be a leader if he had a permit; that none was produced; that he thereafter commanded the crowd to disperse; that the crowd surged forward and forcibly assaulted the policemen, who drew their clubs and pushed back the crowd; that the latter did not separate, but went down Bower Street and threw stones and other missiles at the officers; that two shots were fired in the direction of the police; that shots were fired by both the policemen and the paraders; that one of the officers was mortally wounded, and Samuel C. Hutchins, another officer, was struck by one of the paraders with a flagstaff and was stabbed and permanently injured; that many persons were hit by blows from clubs, missiles and shots coming from the paraders.

There was evidence that Hutchins was ordered by Casey to arrest the men with the flags, "it being Sergeant Casey's object in giving this order to thereby have under arrest the men who were leading in the parade;" that Hutchins went through the crowd to arrest one of the men with a flag "five or six rows back;" that while struggling with this man for possession of the flag he was assaulted by the paraders and struck from behind and also struck across the head and shoulder with a flagstaff, and was stabbed but did not know that he had been stabbed until afterwards.

The parade being in violation of the regulations was unlawful. There was evidence from which it could have been found that all these defendants were in the parade and formed a part thereof. Without reciting in detail the evidence relating to the acts of each defendant, it is plain that all could have been found to have participated in a common purpose by force and violence to march and parade on a public street without permission and in violation of law, and with such a finding they could have been found guilty

of a riot. If the defendants were acting in concert with the others for the accomplishment of a common unlawful purpose, it is not necessary to constitute a riot that all should commit some physical act, it is enough if they were present, aiding and abetting by their presence. *State* v. *Straw*, 33 Maine, 554. *State* v. *Snow*, 18 Maine, 346. If, as the jury could have found, the defendants were present consenting to the unlawful acts, and in a position where they might render aid and assistance, they are guilty as principals. *Commonwealth* v. *Knapp*, 9 Pick. 495, 518. *Clifford* v. *Brandon*, 2 Camp. 358, 370. It follows that the first and fourth requests were rightly refused.

The second request for a ruling that "There is no evidence to justify a finding that officer Hutchins was stabbed with a knife," could not properly have been given. While there was evidence that the officer was stabbed, there was no direct evidence that the weapon used was a knife. It would not seem to be an unwarrantable inference that a stab wound was caused by a knife; however that may be, the offence charged is a riot, a specific offence; the allegation of the assault is merely incidental to and a part of the charge of a riot, but it was not an essential part of that offence. It was not necessary to convict of a riot to show that the officer was stabbed by one of the paraders with a knife, or that he was stabbed at all.

R. L. c. 218, §§ 21, 34, 35. *Commonwealth* v. *Hunt*, 4 Pick. 252. *Commonwealth* v. *Randall*, 4 Gray, 36. *Commonwealth* v. *Hall*, 142 Mass. 454. *State* v. *Russell*, 45 N. H. 83, 86. See cases collected in 18 Encyc. of Pl. & Pr. 1204. The decision in *Commonwealth* v. *McCarthy*, 145 Mass. 575, is not at variance with the conclusion reached.

It was not necessary to a conviction to prove that the persons who took part in the parade were commanded to disperse by any of the officials named in R. L. c. 211, § 1. The offence charged, being a riot at common law, exists wholly independent of the statute. *State* v. *Russell, supra.* Accordingly the sixth request was rightly refused.

The presiding judge accurately instructed the jury upon the issues of law presented, and, as the rights of the defendants seem to have been fully protected, the entry must be

*Exceptions overruled.*